UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH ARUANNO, | Civil Action No. 15-7982 (MCA) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| DR. MERRILL MAIN, et al., | |
| Defendants. | |

**ARLEO, United States District Judge:**

## I. INTRODUCTION

This matter has been opened to the Court by Plaintiff Joseph Aruanno's filing of a Second Amended Complaint ("SAC") in the above-titled action. (ECF No. 7.) He currently resides at the Special Treatment Unit ("STU") in Avenel, New Jersey. He has sued the Attorney General of the State of New Jersey and Dr. Merrill Main, alleging violations of his constitutional rights under 42 U.S.C. § 1983 related to alleged inadequacy of sex offender treatment and other conditions at the STU. For the reasons explained in this Memorandum Opinion, the Court will dismiss the SAC in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B). Because the Court previously dismissed the Complaint pursuant to Rule 8, and in light of Plaintiff's pro se status, the Court will provide Plaintiff with a final opportunity to amend his complaint before the Court dismisses his § 1983 claims with prejudice.

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

This is Plaintiff's second attempt to amend his Complaint. The Court previously granted Plaintiff's application for *in forma pauperis* status pursuant to 28 U.S.C. § 1915. (ECF No. 3.) In that same Order and accompanying Memorandum, the Court also screened the Complaint for

1

*sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B) and determined that the Complaint failed to provide a short and plain statement of his claims or plead enough facts, accepted as true, to plausibly suggest that he entitled to relief. (ECF No. 2, Memorandum Opinion at 3 (citing Fed. R. Civ. P. 8(a); *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013)). The Court therefore dismissed the Complaint without prejudice and permitted Plaintiff to submit an amended Complaint within thirty (30) days of the date of the Order accompanying the Court's Memorandum Opinion. (*See id*; *see also* ECF No. 3.)

Plaintiff subsequently filed an Amended Complaint (ECF No. 4), which the Court again dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to comply with Fed. R. Civ. P. 8(a) and for failure to provide sufficient facts to suggest that he is entitled to relief. (ECF Nos. 5-6.) The Court again provided Plaintiff with the opportunity to file a Second Amended Complaint. Plaintiff has filed a SAC (ECF No. 7), which the Court now screens for dismissal.

The SAC raises four "Points" that appear to respond to the Court's Memorandum Opinion dismissing his Amended Complaint. In Points I and IV, Plaintiff states that he is attempting to bring a § 1983 claim and requests the appointment of counsel. (ECF No. 7, SAC at 3-4, 7.) In Point II, Plaintiff states that the State decided to commit him to the STU two years before he completed his sentence, but failed to provide him with sex offender treatment during the last two years of his prison sentence. (SAC at 4.) In Point III, Plaintiff states that he is attempting to bring a claim pursuant to *Thomas v. Adams*, 55 F. Supp.3d 552 (2014). He also states that he has been denied treatment "many times." As an example of the denial of treatment, Plaintiff states that at his sentencing in the Superior Court, the state argued that he needed treatment, but it was not ordered by the sentencing court. The sentencing court then

2

"contradicted itself" by placing Plaintiff in the STU at the end of his sentence. Plaintiff further states that "there is not any valid treatment at the STU" and that his confinement is "purely punitive[.]" (*Id.* at 5.)

Plaintiff has also submitted a typewritten Exhibit A, which lists 10 points for the Court's consideration.

In Point 1, Plaintiff states that he has requested one-on-one treatment but has been told in writing that it is not available at the STU. (ECF No. 7-1, at 1.)

In Point 2, Plaintiff states that he won a trivia tournament and a female staff member at the STU gave Plaintiff's prize – a watch – to a person with whom she was having a sexual relationship. Plaintiff states that this discourages him from participating. (*Id.*)

In Point 3, Plaintiff states that he attempted to participate in recreation, by playing in the band and buying his own drum set, which was broken by unnamed "Defendants". At some point in 2014, Plaintiff played on "BANDNIGHT" but the snacks that were to be provided were given to others. (*Id.*)

In Point 4, Plaintiff states that he is unable to participate in in educational programs because he is allegedly in treatment refusal. (*Id.*)

In Point 5, Plaintiff states that one of his regular groups is run by a doctor who is a defendant in a personal lawsuit Plaintiff has filed. Plaintiff states that he informed the Administration, but they continue to assign Plaintiff to groups with Dr. Eiser. This individual allegedly interviewed Plaintiff about an incident where Plaintiff warned he was being threatened and permitted another assault to happen. (*Id.*)

In Point 6, Plaintiff alleges that the construction of four therapy rooms should have taken place before Plaintiff and other patients arrived at the STU because there was noise and smoke

3

from welding for an entire year. Plaintiff states that this environment was disruptive and harmful psychologically. Plaintiff also states that he was attempting to participate in a weekly trivia event, the guards were watching television at "full volume". The guards allegedly refused to turn down the television when asked, stating "IT WAS THE DAYROOM". (*Id.* at 1-2.)

In Point 7, Plaintiff alleges that the new therapy rooms are "barely used" despite the settlement, which included an increase in weekly groups. (*Id.* at 2.)

In Point 8, Plaintiff states that when he attempted to reach the ombudsman appointed to oversee the terms of the settlement, Plaintiff waited almost a month with no response. When Plaintiff confronted the ombudsman, he told Plaintiff he did not receive his communications. When Plaintiff brought unspecified issues to the ombudsman's attention, the ombudsman also allegedly stated that there is "NOTHING HE CAN DO" and he has failed to remedy unspecified problems. (*Id.* at 2.)

In Point 9, Plaintiff states that he wrote to the appointed monitor, who replied but stated that he could not contact Plaintiffs directly. The appointed monitor forwarded Plaintiff's complaints to an attorney who is allegedly responsible for the settlement, which Plaintiff describes as "flawed." (*Id.* at 2.)

Finally, in Point 10, Plaintiff states that from December 2014-April 2015, recreational activities were canceled at the STU while certain staff members were being replaced. Plaintiff states that there should have been no gap in recreational activities. (*Id.* at 2.)

### III. **STANDARD OF REVIEW**

Here, Plaintiff's Amended Complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as

4

true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The complaint must also allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (citation omitted).

Courts are required to liberally construe pleadings drafted by *pro se* parties. *Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, pro se litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)).

## IV. ANALYSIS

The Court construes Plaintiff's SAC to attempt to raise claims for relief under 28 U.S.C. § 1983.[1] Principally, Plaintiff appears to allege that he has been denied the right to minimally

---

[1] 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

5

adequate sex offender treatment while in prison and at the STU and complains about other conditions and incidents at the STU. The Court addresses these claims below.

Plaintiff's right to receive sex offender treatment is grounded in the Fourteenth Amendment Due Process Clause. *See Leamer v. Fauver*, 288 F.3d 532, 545 (3d Cir. 2002). In *Leamer*, the Third Circuit held that, since the New Jersey's statutory scheme for sex offenders was predicated on the inmate's response to treatment, that statutory regime created a fundamental due process liberty interest in treatment. *Id.* at 545; *accord Kansas v. Hendricks*, 521 U.S. 346, 368–69 (1997) (inmates housed in prison-like conditions must be afforded a treatment comparable to that provided to other civilly committed persons confined in treatment units). Thus, under Third Circuit law, Plaintiff has a substantive due process right in a treatment facilitating his release prospects. *See Roberts v. Velez*, No. CIV.A. 11–1198 SDW, 2011 WL 2745939, at *8 (D.N.J. July 12, 2011); *Miller v. Christie*, No. CIV.A. 10–2397 KSH, 2011 WL 941328, at *7 (D.N.J. Mar. 11, 2011) (finding that the Third Circuit's holding in *Leamer* extends to an involuntarily committed sex offender under New Jersey's SVPA); *see also Thomas*, 55 F. Supp. 3d at 552 (finding that plaintiffs stated a Fourteenth Amendment claim against supervisory officials). Under this standard, however, Defendants' actions in denying Plaintiff his statutory right to treatment will be found unconstitutional under the Fourteenth Amendment only if they are so arbitrary or egregious as to shock the conscience. *See Wolfe v. Christie*, No. CIV.A. 10–2083 PGS, 2010 WL 2925145, at *14 (D.N.J. July 19, 2010) (citing *Leamer*, 288 F.3d at 546–47

---

        privileges, or immunities secured by the Constitution and laws,
        shall be liable to the party injured in an action at law, suit in equity,
        or other proper proceeding for redress....

"To state a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

(substantive due process claim alleging inadequate treatment for committed sex offender "must focus on the challenged abuse of power by officials in denying [the plaintiff] the treatment regimen that was statutorily mandated and was necessary in order for his condition to improve, and thus for him to advance toward release"); *Traylor v. Lanigan*, No. CV 16-7691(MCA), 2017 WL 2364189, at *6 (D.N.J. May 31, 2017) (same).

Here, Plaintiff's claim based on the failure to provide him sex offender treatment in prison is barred by the two-year statute of limitations applicable to actions under § 1983. It is well established that there is no independent statute of limitations for bringing a claim under 42 U.S.C. § 1983 in federal court. Instead, "the [forum] state's statute of limitations for personal injury" applies to claims filed under 42 U.S.C. § 1983. *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1988). In New Jersey, the statute of limitations for a civil rights claim under § 1983 is two years. *Disque v. New Jersey State Police*, 603 F.3d 181, 189 (3d Cir. 2009).

Petitioner was sentenced to ten years imprisonment and community supervision for life as a sex offender on February 5, 1999. *See Aruanno v. Sherrer*, No. CIV.A.02-2446 JBS, 2005 WL 3588548, at *1 (D.N.J. Dec. 27, 2005), aff'd, 277 F. App'x 155 (3d Cir. 2008). In April 2004, while Aruanno was still serving his prison sentence, the State of New Jersey filed a petition to involuntarily commit Aruanno pursuant to the New Jersey Sexually Violent Predator Act ("SVPA"), N.J.S.A. § 30:4-27.24 et seq. *See Aruanno v. Hayman*, 384 F. App'x 144, 145 (3d Cir. 2010). Any claim based on the failure to provide him with sex offender treatment while in prison is plainly time barred. To the extent Plaintiff is attempting to bring a claim related to the failure to provide him with sex offender treatment when he was serving his prison sentence, the Court will dismiss that claim with prejudice.

7

Petitioner may be able to bring a claim based on the denial of sex offender treatment in the STU. Here, however, the SAC does not allege any plausible facts to suggest that Plaintiff has been denied sex offender treatment altogether for any period(s) of time; nor does he allege that his <u>prescribed treatment</u> has been denied, reduced, or changed for non-medical reasons. *See e.g., Thomas v. Adams*, 55 F. Supp. 3d 552, 576 (D.N.J. 2014) ("when a prescribed medical treatment is denied, reduced, or changed for non-medical reasons, including financial, administrative or logistical, the [denied or reduced] treatment suggests an act of deliberate indifference and amounts to a violation of ... substantive due process with regard to those mental patients whose sole hope for release hinges on obtaining their prescribed" treatment); *Cooper v. Sharp*, No. CIV.A. 10–5245 FSH, 2011 WL 1045234, at * 15 (D.N.J. Mar. 23, 2011) (dismissing claim for relief where Plaintiff alleged mere disagreement with treatment program rather than "a categorical denial of therapy and treatment sessions"); *see also Banda v. Adams*, No. 16–1582, 2017 WL 76943, at *2 (3d Cir. Jan. 9, 2017) ("No claim of deliberate indifference is made out where a significant level of care has been provided and all that is shown is that the civil detainee disagrees with the health care provider's professional judgment about what constitutes proper care.").

Plaintiff's SAC states in a conclusory manner that he has been denied treatment "many times" and that "there is no valid treatment here[.]" (ECF No. 7, SAC at 6.) Because these allegations are wholly conclusory in nature, the Court need not afford them the presumption of truth. Plaintiff then provides "ten recent points" which are attached as Exhibit A to his SAC. (*Id.*) Plaintiff's Exhibit A repeatedly mentions "the settlement", presumably referring to *Alves v. Main*, Civil Action No. 01–789 (DMC), and appears to allege that the certain aspects of the

8

settlement have been violated. The Third Circuit, in its unpublished opinion affirming the approval of the settlement, summarized *Alves v. Main* as follows:

> [*Alves*] commenced in 2001 when Plaintiff Raymond Alves filed a pro se complaint against various New Jersey officials responsible for his treatment at the STU. Alves argued, inter alia, that the STU was unconstitutionally punitive because it failed to provide the minimally adequate treatment that is required by *Youngberg v. Romeo*, 457 U.S. 307, 319–322, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) and is necessary for a legitimate opportunity for release.
>
> Over the course of the litigation, the case has evolved from Alves' 2001 pro se complaint into a class action. Further, different individuals and groups of STU residents have joined the litigation, such as groups represented by, respectively, Plaintiffs Alves, Richard Bagarozy, and Michael Hasher.
>
> Settlement negotiations began in 2005, after three years of discovery, and in 2008 all parties were consolidated under the Alves case. That same year, the parties reached an impasse in settlement talks on the issue of adequate treatment. Counsel for both the Plaintiffs and the State proposed their own preferred experts. From this pool the parties jointly recommended Dr. Judith Becker, an expert proposed by the State. On April 3, 2008, the District Court issued an order appointing Dr. Becker to serve as Joint Neutral Expert and assist in the negotiations, and Dr. Becker then submitted an extensive report suggesting a number of changes to improve the treatment at the STU, based on her professional opinion. The parties executed a formal Settlement Agreement in February 2012, and the Settlement was approved by the District Court on December 4, 2012. While the Agreement implements many of Dr. Becker's recommendations, it does not address certain of her concerns.

*Alves v. Main*, 559 F. App'x 151, 153-54 (3d Cir. 2014). The Plaintiffs who opposed the settlement wanted certain recommendations from Dr. Becker's report to be implemented. *See Alves*, 559 F. App'x at 154-55. Mr. Aruanno individually opposed the settlement. *See id.* at 156. As the Third Circuit noted in affirming the settlement, there was "no determination of any constitutional violations with regard to the STU" in connection with the settlement. *Id.* at 155.

Many of Plaintiff's allegations relate to his dissatisfaction with the *Alves* settlement and/or his belief that the settlement's terms are not being implemented properly. (*See* ECF No.

9

7-1, Exhibit A at ¶¶ 1, 4, 7-9.) For instance, Plaintiff alleges that he has requested one-on-one treatment, but has been told it is not available, despite the recommendation in Dr. Becker's report. (*Id.* at ¶ 1.) Plaintiff further alleges that he is not permitted to participate in educational programs "addressed by Dr. Becker and the settlement" because he is in treatment refusal. (*Id.* at ¶ 4.) Plaintiff also alleges that the therapy rooms are underutilized, despite the settlement, which required an increase in group therapy. (*Id.* at ¶ 7.) Finally, Plaintiff explains that he has contacted the ombudsman and the monitor overseeing the settlement regarding his complaints, but has not received relief. (*Id.* at ¶¶ 8-9.)

Here, Plaintiff's dissatisfaction with the Alves settlement does not provide a basis for relief under § 1983 or amount to a denial of sex offender treatment under the Fourteenth Amendment. Although Plaintiff appears to disagree with the treatment he is receiving at the STU, he has not provided facts suggesting that his prescribed sex offender treatment has been denied, reduced, or changed for non-medical reasons. Plaintiff's additional allegations regarding diversion of snacks and prizes during recreational activities, denial of educational programs due to his treatment refusal, underuse of new group therapy rooms, his assignment to group therapy with a doctor he has sued in a personal lawsuit, and construction noise likewise do violate the Constitution, and thus do not state claims for relief under § 1983.

For the reasons explained in this Memorandum Opinion, the Court will dismiss the SAC for failure to state a claim for relief pursuant to 28 U.S.C. § 1915(e)(2)(B). In light of Plaintiff's pro se status, the Court will provide Plaintiff with a final opportunity to amend his complaint. To the extent he can cure the deficiencies in his SAC, as described in this Memorandum Opinion, Plaintiff may submit a third amended complaint within 30 days of the date of the Order accompanying this Memorandum Opinion. An Appropriate Order follows.

_____
Madeline Cox Arleo, U.S.D.J.

Date: **Dec 12**, 2017